## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

LABORERS WELFARE FUND OF DELAWARE :    CIVIL ACTION
LOCAL NO. 199, LABORERS OF DELAWARE   :
LOCAL UNION NO. 199 PENSION PLAN,       :    NO. 07-CV-
LOCAL 199 LABORERS INTERNATIONAL     :
UNION OF NORTH AMERICA ANNUITY      :
PLAN, LABORERS LOCAL 199 TRAINING     :
AND APPRENTICESHIP FUND and          :
LABORERS LOCAL 199 VACATION FUND     :
(administered through the Laborers Welfare Fund   :
of Delaware Local 199)                   :
c/o GEM Group                         :
650 Naamans Road, Suite 303           :
Claymont, DE 19703                :

          and

LABORERS'-EMPLOYERS' COOPERATIVE    :
EDUCATION TRUST FUNDS          :
c/o Delaware Contractors Association      :
P.O. Box 6520                        :
Wilmington, DE 19804            :
         and                 :
                          :
LABORERS INTERNATIONAL UNION OF     :
NORTH AMERICA, LOCAL NO. 199 AFL-CIO   :
532 South Claymont Street           :
Wilmington, DE  19801           :
                          :
          Plaintiffs          :
                          :
       v.                   :
                          :
DAVID W. TALLEY GENERAL          :
CONTRACTOR LLC               :
199 Airport Road                :
New Castle, DE 19720           :
                          :
         Defendant         :

## COMPLAINT

## JURISDICTION AND VENUE

1.     This action is instituted under, and by virtue of, Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor Management Relations Act of 1947, as amended, ("LMRA"), 29 U.S.C. § 185, to enforce the rights of multiemployer plans to audit the books and records of a contributing employer, and to collect liquidated damages owed for late fringe benefit contributions under Section 301.

2.     This Court has jurisdiction over this matter pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. §§ 1331 and 1337.  Venue is appropriate pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(b).

## PARTIES

3.     The Plaintiffs, Laborers Welfare Fund of Delaware Local No. 199, Laborers of Delaware Local Union No. 199 Pension Plan, Local 199 Laborers International Union of North America Annuity Plan, Laborers Local 199 Training and Apprenticeship Fund, and Laborers Local 199 Vacation Fund (administered through the Laborers Welfare Fund of Delaware Local 199) ("Funds"), are jointly-administered, multi-employer benefit funds within the meaning of Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), and Sections 3(3) and 3(37)(A) of ERISA, 29 U.S.C. §§ 1002(3) and (37)(A).  The Laborers-Employers Cooperative Education Trust ("LECET") is a jointly-administered, multi-employer fund within the meaning of Section 302(c)(9) of the LMRA; 29 U.S.C. § 186(c)(9).  The Funds and LECET receive contributions from various employers who are obligated to make contributions thereto by virtue of their having agreed to be bound by collective bargaining agreements with Laborers International Union of North America Local 199, AFL-CIO ("Local 199") and by virtue of their having agreed to be

bound by the Agreements and Declarations of Trusts that establish the Funds and LECET. The offices of the Funds and LECET are located at 650 Naamans Road, Claymont, Delaware 19703.

4.      Plaintiff, Laborers International Union of North America, Local 199, AFL-CIO ("Local 199") is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5) and an employee organization within the meaning of Section 3(4) of ERISA, 29 U.S.C. §1002(4). Its principal place of business is 532 South Claymont Street, Wilmington, Delaware, 19801. Local 199 represents employees employed in the construction industry as laborers in the State of Delaware.

5.      Defendant, David W. Talley General Contractor LLC ("Defendant"), is a limited liability company organized under the laws of the State of Delaware a principal place of business at 199 Airport Road, New Castle, Delaware 19720. At all times relevant hereto, the Defendant has been an employer engaged in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and Section 152(2) of the NLRA, 29 U.S.C. § 152(2). The Defendant is also an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

## FACTUAL ALLEGATIONS

6.      At all times relevant hereto, the Defendant has agreed to be bound by the terms of a collective bargaining agreement ("Agreement") with Local 199 which set forth, inter alia, the wages, hours and other terms and conditions of employment of laborers employed by the Defendant in the State of Delaware. A copy of the Agreement is attached hereto as Exhibit A. Among the provisions contained in the Agreement are clauses that require Defendant to make timely contributions to the Funds and LECET on a monthly basis when members of Local 199

are employed by the Defendant, and to submit timely monthly contribution report forms to the Funds' administrator.

7.    "Timely" contributions, as referred to under the terms of the Agreement and under the Agreements and Declarations of Trust establishing the Funds and LECET, means that all employee benefit contributions must be received by the Funds and LECET on or before the fifteenth day of the month following the month in which the benefits are earned.

8.    Under the terms of the Agreement and the rules of the Funds and LECET, contribution report forms, like the contributions themselves, must be received no later than the fifteenth day of the month in which the hours were worked by members of Local 199. Under the Agreement and the Agreements and Declarations of Trust establishing the Funds and LECET, all reports received after the fifteenth of the month are subjected to a ten percent liquidated damages charge.

9.    The Trustees of the Funds have established a program pursuant to which they audit the books and records of employers obligated to contribute to the Funds under the terms of the Agreement in order to insure that contributory employers have made the contributions required under the terms of the Agreement and the rules of the Funds.

10.    On November 1, 2005, the Trustees of the Funds decided to commence an audit of the books and records of the Defendant for calendar years 2004 and 2005 and retained the accounting firm of Haggerty & Haggerty, P. A. ("Auditing Firm") to perform such audit.

11.    Representatives of the Auditing Firm contacted the Defendant and obtained the Accounts Payable Check Register but concluded that additional documents were needed.

12.    On or about May 16, 2006, and again on May 18, 2006, the Auditing Firm requested that the Defendant supply purchase orders and invoices for the time period being audited, such documents being necessary for the Auditing Firm to complete its audit.

13.    Notwithstanding the Auditing Firm's request, the Defendant has failed and refused to supply the purchase orders and invoices for the time period being audited nor has the Defendant responded to any requests from the Auditing Firm to discuss the provision of those or any other documents.

**COUNT ONE**
**VIOLATION OF ERISA FOR FAILURE TO PERMIT THE FUNDS TO AUDIT THE BOOKS AND RECORDS OF THE DEFENDANT**

14.    Paragraphs 1 through 13 of the Complaint are re-alleged as if fully set forth herein.

15.    Section 515 of ERISA, as amended, 29 U.S.C. §1145, requires every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collective bargaining agreement to do so in accordance with the terms and conditions of the plan or agreement.

16.    Pursuant to a policy of the Funds that requires periodic audits of contributing employers, the Trustees of the Funds elected to conduct an audit of the books and records of the Defendant in order to insure that the Defendant made all contributions to the Funds as it was obliged to do under the terms of the Agreement.

17.    The refusal of the Defendant to permit the Funds, through the Auditing Firm, to audit all the Defendant's books and records so as to permit the Auditing Firm to conduct a full and complete audit is a violation the collective bargaining agreement and of ERISA in that the Defendant has failed to adhere to the rules and terms of the Funds' benefit plans.

## COUNT TWO
## BREACH OF CONTRACT FOR FAILURE TO PERMIT THE FUNDS TO AUDIT THE BOOKS AND RECORDS OF THE DEFENDANT

18.    Paragraphs 1 through 17 of the Complaint are re-alleged as if fully set forth herein.

19.    Article XXIII, Section 3 of the Agreement provides, *inter alia:*

> In the event the trustees or administrator of any Funds herein deem same desirable, they shall have the right to an audit of the employer's payroll records in question covering employees working under this Agreement.

20.    The refusal of the Defendant to permit a full and complete audit constitutes a breach of the Agreement.

WHEREFORE, the Plaintiffs urge this Honorable Court to:

(1)    Enter an order requiring that the Defendant provide to the Auditing Firm, or any other auditor employed by the Plaintiffs, books and records of the Defendant necessary for the Auditing Firm or any other auditor to determine whether in fact the Defendant made sufficient contributions to the Funds, as required under the terms of the Agreement;

(2)    Pay to the Plaintiffs reasonable attorneys' fees and costs involved in the litigation of this matter;

(3)    Order that the Defendant pay to the Plaintiffs any monies determined due and owing the Plaintiffs that may be established during the course of this litigation; and

(4)    Grant such other relief as this Court may deem just and reasonable.

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

BY: _____
Timothy J. Snyder (No. 2408)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
Telephone: (302) 571-6645
Telefax: (302) 576-3336
Email: tsnyder@ycst.com

Of Counsel:

Jonathan Walters, Esquire
MARKOWITZ & RICHMAN
121 S. Broad Street, Suite 1100
Philadelphia, PA  19107
Telephone: (215) 875-3121
Telefax: (215) 790-0668
Email: jwalters@markowitzandrichman.com

Attorneys for Plaintiffs

Dated: January 29, 2007

# EXHIBIT A

# Collective Bargaining Agreement

### by and between

## Allied Division of the Delaware Contractors Association

### and

## Delaware Laborers' District Council
## (Locals 199 and 847)
### of the
## Laborers' International Union of North America

### Preamble

WHEREAS, this Collective Bargaining Agreement (hereinafter the "Agreement") is entered into by the Allied Division of the Delaware Contractors Association (hereinafter the "Association") and Delaware Laborers' District Council (hereinafter the "Union") affiliated with the Laborers' International Union of North America, and

WHEREAS, it is the purpose of this Agreement to build, develop and maintain a harmonious working relationship between the employers of the Association and the Unions in which the rights of both parties are recognized and respected and the work is accomplished with the efficiency, economy and quality that is necessary in order to expand the work opportunities of both parties,

NOW, THEREFORE, in consideration of the mutual covenants herein expressed, BE IT AGREED AS FOLLOWS:

**Article I: Agreement**
This Agreement is entered into this 12th day of May, 2004, by and between the Allied Division of the Delaware Contractors Association, Inc., and Delaware Laborers' District Council acting on behalf of Locals 199 and 847 of the Laborers' International Union of North America. All economic increases provided for herein commencing May 1, 2004 shall be retroactive to said date.

**Article II: Recognition**
Section 1. **Association.** All employer members of the Association who have authorized, or who have subsequently authorized the Association, in writing to act as its collective bargaining representative shall be bound by the provisions of this Agreement. The Association represents that it is duly authorized by those employers listed in Appendix A to enter into this Agreement, and to bind said members as stated herein. The Union shall be notified within twenty four (24) hours of any new employers represented by the Association who elect to be bound by the provisions of this Agreement, or of any current member who withdraws from the Association the authority to continue to act as its collective bargaining representative. No bound employer may withdraw from this Agreement before the end of its termination date

Section 2. **Bargaining Unit.** There shall be one bargaining unit for all employers bound to this Agreement for the territorial and work jurisdiction covered herein. That bargaining unit shall be the Allied Division of the Delaware Contractors Association, Inc., which shall included all

1

present and future members and employers for whom said Association bargains or by whom it has been designated to represent.

Section 3.  **Union**.  The Association recognizes the Union as the exclusive bargaining representative for all laborers (hereinafter referred to as employees) performing work within the territorial and work jurisdiction of the Union and of this Agreement.  The Union shall be recognized as the bargaining unit for all covered employees who work for all employers bound by this Agreement.

## Article III. Liability
Section 1.  **Association.**  The Association enters this Agreement on behalf of its bound employer-members and is not a principal hereto and shall not be held liable in any manner for any breach of this Agreement by any employer-member bound hereby, and it is further understood that the liabilities of said employer-members shall be several and not joint.

Section 2.  **Union.**  The Delaware Laborers' District Council enters this Agreement on behalf of its affiliated local unions and it is further understood that the liabilities of the District Council, Locals 199 and 847 shall be several and not joint.  It is further understood that the acts of any individual member of Local 199 or 847 on his own initiative and without the authority of the union shall not render either union or the District Council liable therefor, nor is the union otherwise responsible for the acts of unauthorized agents.  It is further understood that the Laborers' International Union of North America is not a party to this Agreement and is not liable for the actions or inactions of the District Council, Locals 199 and/or 847 or their memberships.

## Article IV: Management Rights and Obligations.
The employer retains complete and exclusive authority for the management of his operations. Except as expressly limited by other provisions of this Agreement, the employer shall have the right to plan, direct and control the operation of all his work and his workforce, at his sole discretion, including but not limited to, the assignment of employees to their jobs; demotion, hiring, layoff of employees due to lack of work or for other legitimate reasons; promotion; selection of foremen and general foremen, or other supervisory personnel; suspension or discharge of employees for proper cause; and transfer of employees.  No customs, practices, or rules shall be observed or permitted which limit or otherwise restrict production, or which restrict the individual or joint working efforts of employees.  The employer may utilize any method or technique of construction, and there shall be no limitations or restrictions regardless of location or source on the choice of design or materials, the use of machinery, pre-assembled, pre-cast, or pre-fabricated materials; tools; or other labor saving devices.  The employer shall have the right to furnish and/or purchase any regularly catalogued item or manufactured component.  The employer shall decide the amount of equipment to be used on his jobs and the number of men needed.  Employees shall observe the regulations and rules of the employer which are not inconsistent with this Agreement, providing said regulations and rules are posted at the employer's job sites.

## Article V. Union Rights and Obligations.
Section 1.  **Business Manager**:  The Union Business Manager or Agent shall have access to all jobs over which the employer exercises control of entry, and shall fully comply with safety, security, and visitor rules established for the project.  Employers working in industrial plants shall make arrangements with plant management to permit the Business Manager or Agent to visit the job site.

Section 2.    **Shop Steward**:  The Business Manager shall appoint and remove all stewards, and shall notify the employer in writing of such action.  The steward shall be a qualified workman, shall perform work assigned to him by the employer, and shall exercise no supervisory functions.  There shall be no non-working stewards. The working steward shall be paid at the applicable wage rate for the job classification in which he is employed, subject to Section 3 below.

The steward shall not be discharged or discriminated against for the faithful performance of their Union duties.  The steward shall not cause, encourage, or instigate any disruption of the job or a work stoppage.  The employer agrees to notify the Union prior to the termination of a steward.  If a steward is to be discharged, the employer shall show just cause for the same, and shall provide the Union with twenty-four hours notice so that the Union has adequate time to appoint another steward.  The steward shall be notified when new employees are hired and one-half hour before any employee is discharged.

Section 3.    **Certified Shop Stewards**.  A Shop Steward who has satisfactorily completed the OSHA 10 hour safety course, together with any additional courses required by the Union, is hereby recognized, as a result of this additional training, to be a benefit to the employer and shall be designated a Certified Shop Steward.  A Certified Shop Steward who has been appointed Shop Steward by the union and who is keeping time on behalf of the Benefit Funds for five or more laborers, including him or herself, shall be paid, beginning May 1, 2004, $.40 over the Class A wage rate or the wage rate for the classification in which the steward is working, whichever is higher, and beginning May 1, 2005, $.45 over the Class A wage rate or the wage rate for the classification in which the steward is working, whichever is higher, and beginning May 1, 2006, $.50 over the Class A wage rate or the wage rate for the classification in which the steward is working, whichever is higher.

Section 4.    The steward shall remain on the job as long as employees covered by this Agreement are working.

**Article VI.  More Favorable Agreements**
Section 1.    Should the Union at any time enter into any agreement to perform construction work on a job-by-job basis with any employer which will permit its members to be employed under conditions more favorable to that employer that the conditions contained herein, or should the Union countenance a course of conduct on a job-by-job basis by any employer enabling said employer to operate under more advantageous terms and conditions than are provided herein, said more favorable terms and conditions shall automatically become a part of this Agreement and shall apply to all employers bound hereto provided that any bound employer, through the Association, sends written notice to the Union calling the matter to its attention.  This section shall only apply to the particular job in question.

Section 2.    In the event that the Union shall conclude an agreement for work covered by this Agreement that is for a term of years and not for a single job only on terms that are in whole or part more favorable than the terms set forth in the within Agreement, an employer who is a member of the Association may choose to sign and work under such other Agreement, which Agreement shall then supersede the within Agreement.  The employer's election, once made, shall be irrevocable unless the revocation thereof is consented to in writing by the Union.

Section 3.    It is agreed that if the Union has been furnishing employees to an employer in the State of Delaware to do maintenance work, it may continue the practice for the term of this Agreement, provided that it be understood between the parties that the maintenance work to be

3

done by employees covered herein shall be limited to the preservation of existing structures and the interiors thereof owned by the employer, and that it does not include additions to, betterments, changes, or enlargements of said structures or interiors. An employee employed for maintenance work shall be a steady employee of the employer.

### Article VII. Waivers and Modifications.
No modification, variation, or waiver of any term or provision herein shall be valid unless agreed upon in writing by both the Association and the Union.

### Article VIII. Purpose.
The purpose of this Agreement is to set forth herein conditions with respect to hours of work, wages and other conditions of employment under which employees of the employer shall work in the trade. The relationship of the parties is fully and exclusively set forth herein, and by no other means, oral or written. Practices not part of the terms and conditions of this Agreement will not be recognized.

### Article IX. Legality of Agreement
Section 1. By law: This Agreement shall be interpreted and applied, insofar as reasonably consistent with its intent and objectives, so as to be consistent with all federal, state and local laws, regulations and the final decisions of any courts or agencies of competent jurisdiction.
Section 2. By voidance. Should any of the terms or provisions of this Agreement be determined to be, or held to be, in contravention of any applicable regulation, rules or statutes of any duly qualified governmental body or agency, such terms or provisions shall be null and void, without thereby affecting any of the other terms or conditions herein.

### Article X. Territorial Jurisdiction
This Agreement shall cover all work in the State of Delaware. The territory of Local 199 shall be recognized as New Castle County. The territory of Local 847 shall be recognized as Kent and Sussex Counties.

### Article XI. Craft Jurisdiction.
Laborers' work shall include all such work and jurisdiction as may have been acquired by reason of amalgamation or merger with former national or international unions, and as may be hereafter acquired. Laborers' work shall also include all such work and jurisdiction as declared by the decisions of the former National Joint Board for the Settlement of Jurisdictional Disputes up to its demise in 1969, and as may have otherwise been acquired and recognized pursuant to area practice.

### Article XII. New Work Classification
If in the term of this Agreement, mechanized changes or changes in the method of operation, or changes in the assignment of existing tasks not previously performed by the Laborers, result in different or new types of work, the Association and the Union agree to discuss the same and mutually agree on such work's proper classification. Any such agreement shall be subject to the approval of the Laborers' International Union of North America, Eastern Region office.

### Article XIII. Hiring, Portability and Union Security
Section 1.    Neither the employer nor the Union shall discriminate against employees, or applicants for employment, for reasons of age, color, creed, national origin, gender or sexual preference.

4

Section 2.     In consideration of the foregoing, the Employer agrees to give the Union first opportunity to furnish laborers and apprentices to the Employer upon his request, and provided that notice of such requirement is given to the Union's Business Manager, or his representative on the job, twenty four (24) hours before the men are needed, stating the number of men needed, the skills required, the time and location of the job, the Union agrees to fulfill the Employer's requirements for laborers. If the Union is unable to supply the laborers within twenty four hours, then the Employer may hire laborers from any source.

Notwithstanding the above, the Employer shall be permitted to hire laborers who are not members of the union without first making a request to the union for laborers where such laborers can demonstrate that they have approximately 4,000 hours of experience as construction craft laborers and are eligible for initiation into the union without applying to the Apprenticeship Program. Immediate notice shall be given to the union of such proposed hiring and proof of a laborer's work experience shall be submitted to the Apprentice Coordinator within three days of the laborer's hiring for the Coordinator's review and approval in accordance with its regular rules and procedures. Laborers hired pursuant to this provision shall apply for membership in the union in accordance with the Union Security Clause set forth at Section 5 below. The union shall not be required to admit such laborers into the union until and unless the Apprentice Coordinator determines that they are experienced construction craft laborers as set forth above.

Section 3.     The Employer, provided it has notified the local union in advance of the start of the project that the project was to begin and is otherwise in compliance with this Agreement and is not delinquent to the benefit or checkoff funds established hereunder, shall be allowed liberal portability of key employees subject, however, to the territorial local union's right to fair representation in the Employer's workforce for the project. Key employees are laborers who are members of a local union signatory to this Agreement who have worked for the Employer for at least eight weeks in the previous six months.

Section 4.     Employers shall not be permitted to bring into the territory covered by this Agreement any key employees who are not members of the signatory unions without the union's consent, and in no case may an Employer bring in more than two such key employees, provided such employees are members in good standing of a construction local union affiliated with the Laborers' International Union of North America.

The Employer shall make all benefit payments required under this Agreement on behalf of such out-of-territory employees to the benefit funds established hereunder. Furthermore, the Employer agrees not to assign any employee who is not a member of a local union signatory to this Agreement to a project covered by this Agreement who has not first executed an authorization form for the checkoff funds established hereunder.

Section 5.     All employees who are present members of the Union shall maintain their membership in good standing in the Union in order to continue in employment. All new employees, on the eighth (8) day following the beginning of their employment, or the execution of this Agreement, or the effective date of this Agreement, whichever is later, shall become and remain members in good standing of the Union in order to continue in employment, all to be applied and enforced in accordance with the provisions of the National Labor Relations Act as amended. A member shall be considered in good standing if he or she has paid his or her initiation fee, and is current in the payment of working dues, organizing dues and monthly dues. Upon lawful notice by the Union to the Employer, any employee who fails to become or remain a member of the Union in good standing shall be terminated.

**Article XIV.   Apprenticeship**

Section 1.       **Joint Apprenticeship and Training Committee**.  The parties agree to continue to maintain a Construction Craft Laborer Apprenticeship Program.  The Joint Training and Apprenticeship Committee established or to be established by the parties in accordance with Apprenticeship Standards previously adopted by the parties shall have the authority to set, administer and enforce all rules, regulations, ratios and rates for apprentices and the apprenticeship program.

Section 2.       **Apprentices**.  The Employer shall participate in the apprenticeship program by accepting apprentices for employment upon referral by the Union.  The Employer is required to accept an apprentice, provided there is work for such apprentice, once five journey workers are employed.  The employment of additional apprentices after the first apprentice hired shall be at the discretion of the Employer.  The Employer may, however, employ one apprentice for the first journey worker employed and no more than one additional apprentice for each additional three journey workers employed.  An apprentice shall not work on the jobsite unless supervised by a journey worker.  The referral of apprentices to any employer is a matter of discretion residing with the Local Union and JATC acting through the Apprentice Coordinator.

An apprentice should, whenever possible, be rotated by the Employer through different types of work so as to become trained in a variety of operations and work skills.  Where the Employer is unable to provide an apprentice with experience in the full range of craft skills, the JATC may request the Local Union to reassign the apprentice to other employment in order to provide the experience.  For so long as the Employer is able to provide the necessary range of employment experience, the Employer may choose to retain the apprentice from job to job throughout the state, but shall notify the Local Union and JATC of all reassignments.  It shall be the objective of both the Employer and the Union to make reasonable efforts to keep apprentices working so that they can complete the apprentice program and become journey workers in a reasonable amount of time.

An apprentice shall not be penalized for taking off from work to attend offsite training required by the JATC (although time off for training shall be unpaid).
999

**Article XV.  Wages.**  Tier I wages and benefits shall be increased $1.50 per hour effective 5/1/04 and allocated as provided hereunder.  Effective 5/1/05, Tier I wages and benefits shall be increased $1.50 per hour and will be allocated by the union prior to the effective date.  Effective 5/1/06, **Tier I** wages and benefits shall be increased $1.25 per hour and shall be allocated by the union prior to said effective date.  **Tier II** wages shall be increased $1.00 per hour on 5/1/04 and allocated as provided here under.  **Tier II** wages shall be increased $1.00 per hour on 5/1/05 and $1.00 per hour on 5/1/06 and shall be allocated by the union prior to said effective dates.

Section 1.  Tier I Building Construction Wages for **New Castle County** shall be:

| Effective 5/1/06 | | |
|---|---|---|
| Rate Schedule A: | $ 20.44 | (A Package: $29.85) |
| Rate Schedule B: | $ 20.69 | |
| Rate Schedule C: | $ 20.94 | |
| Rate Schedule D: | $ 21.44 | |
| Rate Schedule E: | $ 21.69 | |
| Rate Schedule F: | $ 22.69 | |

Laborers whose only assignment is cleanup shall be paid 85% of the **Schedule A** wage rate. Benefits shall be paid in accordance with Benefit **Schedule I** below.

Section 2. **Tier II** Building Construction Wages for **New Castle County** shall be:

| Effective 5/1/06 | | |
|---|---|---|
| Rate Schedule A: | $ 17.94 | (A Package: $27.35) |
| Rate Schedule B: | $ 18.19 | |
| Rate Schedule C: | $ 18.44 | |
| Rate Schedule D: | $ 18.94 | |
| Rate Schedule E: | $ 19.19 | |
| Rate Schedule F: | $ 20.19 | |

Laborers whose only assignment is cleanup shall be paid 85% of the **Schedule A** wage rate. Benefits and Checkoffs shall be paid in accordance with Benefit **Schedule I** below.

Section 3. **Tier I** Heavy and Utility Construction Wages for **New Castle County** shall be:

| Effective 5/1/06 | | |
|---|---|---|
| Rate Schedule A: | $ 20.44 | (A Package: $29.85) |
| Rate Schedule B: | $ 20.69 | |
| Rate Schedule C: | $ 20.94 | |
| Rate Schedule D: | $ 21.44 | |
| Rate Schedule E: | $ 21.69 | |
| Rate Schedule F: | $ 22.69 | |

Laborers whose only assignment is cleanup shall be paid 85% of the **Schedule A** wage rate. Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule I** below.

Section 4. **Tier II** Heavy and Utility Construction Wages for **New Castle County** shall be:

| Effective 5/1/06 | | |
|---|---|---|
| Rate Schedule A: | $ 17.94 | (A Package: $27.35) |
| Rate Schedule B: | $ 18.19 | |
| Rate Schedule C: | $ 18.44 | |
| Rate Schedule D: | $ 18.94 | |
| Rate Schedule E: | $ 19.19 | |
| Rate Schedule F: | $ 20.19 | |

Laborers whose only assignment is cleanup shall be paid 85% of the **Schedule A** wage rate. Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule I** below.

Section 5.        Highway Construction Wages for **New Castle County**

| Effective 5/1/06 | | |
|---|---|---|
| Rate Schedule A: | $ 14.10 | (A Package: $21.00) |
| Rate Schedule B: | $ 14.35 | |
| Rate Schedule C: | $ 14.60 | |
| Rate Schedule D: | $ 15.10 | |
| Rate Schedule E: | $ 15.35 | |
| Rate Schedule F: | $ 16.35 | |

Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule III** below.

Section 6. **Tier I** Building Construction Wages for **Kent County** shall be:

| | | |
|---|---|---|
| Effective 5/1/06 | Rate Schedule A: | $ 19.19  (A Package:  $28.60) |
| | Rate Schedule B: | $ 19.44 |
| | Rate Schedule C: | $ 19.69 |
| | Rate Schedule D: | $ 20.19 |
| | Rate Schedule E: | $ 20.44 |
| | Rate Schedule F: | $ 21.44 |

Laborers whose only assignment is cleanup shall be paid 85% of the **Schedule A** wage rate. Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule I** below.

Section 7. **Tier II** Building Construction Wages for **Kent County** shall be:

| | | |
|---|---|---|
| Effective 5/1/06 | Rate Schedule A: | $ 15.49  (A Package:  $24.90) |
| | Rate Schedule B: | $ 15.74 |
| | Rate Schedule C: | $ 15.99 |
| | Rate Schedule D: | $ 16.49 |
| | Rate Schedule E: | $ 16.74 |
| | Rate Schedule F: | $ 17.74 |

Laborers whose only assignment is cleanup shall be paid 85% of the **Schedule A** wage rate. Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule I** below.

Section 8.      Heavy and Utility Construction Wages for **Kent County** shall be:

| | | |
|---|---|---|
| Effective 5/1/06 | Rate Schedule A: | $ 13.15  (A Package:  $20.05) |
| | Rate Schedule B: | $ 13.35 |
| | Rate Schedule C: | $ 13.65 |
| | Rate Schedule D: | $ 14.15 |
| | Rate Schedule E: | $ 14.35 |
| | Rate Schedule F: | $ 15.40 |

Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule III** below.

Section 9.      Highway Construction Wages for **Kent County** shall be:

| | | |
|---|---|---|
| Effective 5/1/06 | Rate Schedule A: | $ 13.28  (A Package:  $20.18) |
| | Rate Schedule B: | $ 13.53 |
| | Rate Schedule C: | $ 13.78 |
| | Rate Schedule D: | $ 14.28 |
| | Rate Schedule E: | $ 14.53 |
| | Rate Schedule F: | $ 15.53 |

Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule III** below.

Section 10.  **Tier I** Building Construction Wages for **Sussex County**

| | | |
|---|---|---|
| Effective 5/1/06 | Rate Schedule A: | $ 19.19  (A Package:  $28.35) |

8

|                    |          |
|--------------------|----------|
| Rate Schedule B:   | $ 19.44  |
| Rate Schedule C:   | $ 19.69  |
| Rate Schedule D:   | $ 20.19  |
| Rate Schedule E:   | $ 20.44  |
| Rate Schedule F:   | $ 21.44  |

Laborers whose only assignment is cleanup shall be paid 85% of the **Schedule A** rate. Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule I** below.

Section 11.   **Tier II** Building Construction Wages for **Sussex County**

| Effective 5/1/06 | Rate Schedule A: | $ 12.64  (A Package:  $19.80) |
|------------------|------------------|-------------------------------|
|                  | Rate Schedule B: | $ 12.89                       |
|                  | Rate Schedule C: | $ 13.14                       |
|                  | Rate Schedule D: | $ 13.64                       |
|                  | Rate Schedule E: | $ 13.89                       |
|                  | Rate Schedule F: | $ 14.89                       |

Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule II** below.

Section 12.     Heavy and Utility Construction Wages for **Sussex County**

| Effective 5/1/06 | Rate Schedule A: | $ 12.90  (A Package:  $19.80) |
|------------------|------------------|-------------------------------|
|                  | Rate Schedule B: | $ 13.15                       |
|                  | Rate Schedule C: | $ 13.40                       |
|                  | Rate Schedule D: | $ 13.90                       |
|                  | Rate Schedule E: | $ 14.15                       |
|                  | Rate Schedule F: | $ 15.15                       |

Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule III** below.

Section 13.     Highway Construction Wages for **Sussex County**

| Effective 5/1/06 | Rate Schedule A: | $ 12.91  (A Package:  $19.81) |
|------------------|------------------|-------------------------------|
|                  | Rate Schedule B: | $ 13.16                       |
|                  | Rate Schedule C: | $ 13.41                       |
|                  | Rate Schedule D: | $ 13.91                       |
|                  | Rate Schedule E: | $ 14.16                       |
|                  | Rate Schedule F: | $ 15.16                       |

Benefits and Checkoffs shall be paid in accordance with Benefits **Schedule III** below.

**Article XVI. Benefits**
Benefit and Checkoff Schedules are as follows:

| **Schedule I:** | **5/1/04** | **5/1/05** | **5/1/06** |
|-----------------|------------|------------|------------|
| Benefits        |            |            |            |
| Welfare         | $ 3.80     | $ 3.80     | $ 3.80     |
| Pension         | $ 1.65     | $ 2.90     | $ 3.40     |
| Annuity         | $ 2.25     | $ 2.50     | $ 3.00     |
| Training        | $  .51     | $  .51     | .51        |

| DE LECET | $ .20 | $ .20 | $ .20 |
|---|---|---|---|

Checkoffs
| Working dues | | 5% of gross wage | |
|---|---|---|---|
| Organizing Dues | $ .25 | $ .25 | $ .25 |
| DE LPL | $ .15 | $ .15 | $ .15 |
| Vacation Fund | $ .75 | $ .75 | $ .75 |
| (for journeymen only) | | | |

| **Schedule II:** | **5/1/04** | **5/1/05** | **5/1/06** |
|---|---|---|---|
| Benefits | | | |
| Welfare | $ 3.80 | $ 3.80 | $ 3.80 |
| Pension | $ 1.65 | $ 2.65 | $ 3.15 |
| Annuity | $ 0 | $ 0 | $ .50 |
| Training | $ .51 | $ .51 | $ .51 |
| DE LECET | $ .20 | $ .20 | $ .20 |

Checkoffs
| Working dues | | 5% of gross wage | |
|---|---|---|---|
| Organizing Dues | $ .25 | $ .25 | $ .25 |
| DE LPL | $ .15 | $ .15 | $ .15 |
| Vacation Fund | $ .75 | $ .75 | $ .75 |
| (for journeymen only) | | | |

| **Schedule III:** | **5/1/04** | **5/1/05** | **5/1/06** |
|---|---|---|---|
| Benefits | | | |
| Welfare | $ 3.80 | $ 3.80 | $ 3.80 |
| Pension | $ 1.65 | $ 2.65 | $ 3.15 |
| Annuity | $ 0 | $ 0 | $ .50 |
| Training | $ .25 | $ .25 | $ .25 |
| DE LECET | $ .20 | $ .20 | $ .20 |

Checkoffs
| Working dues | | 5% of gross wage | |
|---|---|---|---|
| Organizing Dues | $ .25 | $ .25 | $ .25 |
| DE LPL | $ .15 | $ .15 | $ .15 |
| Vacation Fund | $ .75 | $ .75 | $ .75 |
| (for Journeymen only) | | | |

**Article XVII. Wage Classifications**
Wage classifications as used in the Schedules of Wages set forth above are as follows:

Rate Schedule A  (Base Laborers Rate)
General construction, dump man, fire waterman, flagman, salamanders, truck spotters

Rate Schedule B
  Caulkers, operators of pneumatic & electric tools, vibrating machines, concrete saws & pumps (which include hookups of most and or pipe), pot tender, & sewer pipelayers, demolition (where walls are required to be ridden down by hand tools, driller, (except core, diamonds and multiple wagon, forklift laborers, gunite materials & rebound workers, mason plaster tenders, cement workers, mobile buggy operators, operators of portable power saws, power sewing machines,

scaffold builders, shorting, signalman, hook up man, including, when working with digging and grading equipment, stripping of all flat archwork & for work cleaning & oiling thereof, tool room attendant.

## Rate Schedule C
   Burners & welders, caisson men, top men (Where excavation for caissons are dug 8 feet or more below the natural grade level adjacent to the starting point of the caisson hole, the rate shall apply at ground level, concrete specialist driller (core, diamond, or multiple nozzle & rod workers) sandblasters (nozzlemen), tunneling, underpinning excavation (when an underpinning is dug 8 feet or more, working in compressed air.

## Rate Schedule D
   Caisson workers, bottom man, (See qualifications for top man in Schedule C above)

## Rate Schedule E
   Blasters, Laborers engaged in unloading, placing, & assisting in the installation of well point systems or deep well systems as long as needed on the job

## Rate Schedule F
   Asbestos Removal (certified), toxic waste removal, lead abatement


**Article XVIII.  Application of Tier I and Tier II Wage Schedules**
Section 1.        Except as otherwise agreed to by the union on a job-by-job basis, all prevailing wage projects, work covered by a Project Labor Agreement or other Building Trades agreement, and work done at facilities which traditionally do not accept bids from non-union companies shall be bid at Tier I wage and Benefit Schedule I rates.  Tier II wage rates and their accompanying benefit schedules may be applied on all other projects.

Section 2.        Except when fulfilling an employer request for apprentices, the Union shall refer only laborers to Tier I projects who have 4,000 hours or more of documented experience as construction craft laborers.  If no such laborers are available for referral, then the Union may refer laborers with fewer than 4,000 hours of experience to the Tier I project.   All laborers working at a Tier I project shall be paid in accordance with the Tier I wage schedule and the applicable benefit schedule.

**Article XIX.  Fringe Benefit Option**
Section 1.        The Union may, in its sole discretion, allocate the economic package in any manner that it deems appropriate between wages, fringes and checkoff funds.  It shall be the responsibility of the Union to advise the Association or employer in writing of its decision to distribute the economic package as permitted at least thirty days before any such increase, where possible.

Section 2.        At the option of the Association, the Industry Advancement Fund may be increased during the life of this Agreement.  Said increase shall be from the funds of the employer and in no way affect the employee base rate and fringes specified herein.

**Article XX.  Industrial Fume Stacks.**
Laborers working on industrial fume stacks, silos, water towers, storage elevators or structures similar in design or purpose over fifty (50) feet in height shall be paid an additional twenty-five cents ($.25) per hour for each additional twenty (20) feet of height.

**Article XXI.  Foremen and General Foremen.**

Section 1.        When eight (8) or more employees are employed by any employer on one job, one of them shall be designated a foreman.  The foreman shall be required to work unless otherwise assigned by the employer and shall not be required to supervise more than eighteen (18) employees.  A general foreman's duties shall be that of general supervision over all work coming within the Laborers' jurisdiction.  All orders to employees shall come from the foreman.  All orders to foremen shall come from a general foreman except when no general foreman is required.  In such cases, foremen shall take orders from the superintendent or the employer.  All foremen and general foremen shall be members of the union.

Section 2.        Foremen shall be paid $1.00 more than the highest paid employee under the foreman's supervision.  General foremen shall be paid not less than $1.00 more than the highest paid employee under the general foreman's supervision.  Said premiums shall be considered part of the base wage rate.

**Article XXII.  Fringe Benefit and Checkoff Funds**

Section 1.        **Local 199 and 847 Health and Welfare Fund.**  All Employers bound by this Agreement shall be contribute such amount as has been allocated by the parties to the Local 199 and 847 Health and Welfare Fund, which will be administered in accordance with the applicable trust agreement, as amended or may be amended.  Employers bound by this Agreement are also bound by the rules and regulations of the trust agreement, provided that such rules and regulations are not inconsistent with this Agreement.

Section 2.        **Local 199 and 847 Pension Fund.**  All Employers bound by this Agreement shall contribute such amount as has been allocated by the parties to the Local 199 and 847 Pension Fund, which will be administered in accordance with the applicable trust agreement, as amended or may be amended.  Employers bound by this Agreement are also bound by the rules and regulations of the trust agreement, provided that such rules and regulations are not inconsistent with this Agreement.

Section 3.        **Local 199 and 847 Annuity Fund.**  All Employers bound by this Agreement shall contribute such amount as has been allocated by the parties to the Local 199 and 847 Annuity Fund, which will be administered in accordance with the applicable trust agreement, as amended or may be amended.  Employers bound by this Agreement are also bound by the rules and regulations of the trust agreement, provided that such rules and regulations are not inconsistent with this Agreement.

Section 4.        **Local 199 and 847 Education and Training Fund.**  All Employers bound by this Agreement shall contribute such amount as has been allocated by the parties to the Local 199 and 847 Training and Education Fund, which will be administered in accordance with the applicable trust agreement, as amended or may be amended.  Employers bound by this Agreement are also bound by the rules and regulations of the trust agreement, provided that such rules and regulations are not inconsistent with this Agreement.

Section 5.        **Industry Advancement Fund.**  All Employers bound by this Agreement shall contribute .8% (eight tenths of one percent) of the total base wage and fringe benefit package to the Industry Advancement Fund, which contribution shall be from the employer's own funds and not from the wage and fringe benefit package agreed to herein.  The Fund shall be administered for purposes and under conditions as set out in a separate Employer Trust Agreement governing said fund. Employers bound by this Agreement are also bound by any rules or regulations

12

contained in the Trust Agreement governing the fund. The fund shall not be used for any anti-union purpose.

Section 6.        **Delaware Laborers'-Employers' Cooperation and Education Trust.** (DE LECET) The parties agree to establish DE LECET to provide a vehicle for union-management cooperation on issues of common interest. All Employers bound by this Agreement shall contribute such amount as has been allocated by the parties DE LECET, which will be administered in accordance with the applicable trust agreement, as amended or may be amended. Employers bound by this Agreement are also bound by the rules and regulations of the trust agreement, provided that such rules and regulations are not inconsistent with this Agreement.

Section 7.        **Working Dues Checkoff.** The employer agrees to deduct from a sum equal to 5% of the gross wage of each laborer (or such other sum as may be authorized by the District Council) who is working under this Agreement and who has signed a dues checkoff authorization form. The fund administrator shall forward the sums collected to the appropriate local union in accordance with procedures established thereby.

Section 8.        **Organizing Dues (LEROF) Checkoff.** The employer agrees to deduct the sum of $.25 cents per hour worked (or such other sum as may be authorized by the District Council) from the wages of each employee who signs an organizing dues checkoff authorization form for the Laborers' Eastern Region Organizing Fund. The fund administrator shall forward the sums collected to the Laborers' Eastern Region Organizing Fund in accordance with procedures established thereby.

Section 9.        **Delaware LPL Checkoff.** The employer agrees to deduct the sum of $.15 cents per hour worked (or such other sum as may be authorized by the District Council) from the wages of each employee who signs a checkoff authorization form for the Delaware Laborers' Political League. The fund administrator shall forward the sums collected to the Delaware LPL in accordance with procedures established thereby.

Section 10.        **Vacation Fund.** The Employee shall contribute to a Vacation Fund for each hour worked by each journey person employee covered by this Agreement as required by the schedule of contributions to the Vacation Fund set forth in Article XVI hereof. The Vacation Fund shall be set up as individual employee accounts and is to be administered through the Local 199 and 847 Health and Welfare Fund. Payroll taxes on the Vacation Fund contributions are to be deducted at the source in the following manner: The Vacation Fund contribution shall be included in the gross pay and all required payroll taxes shall be deducted. After making the necessary payroll tax deductions, the full contribution specified in Article XVI shall be deducted from net wages and forwarded to the Fund's offices with the other benefit fund contributions.

**Article XXIII. Contribution Procedures.**
Section 1.        Contributions and checkoffs (provided checkoff forms have been signed) as set forth in this Agreement shall be made to the funds and entities established or recognized hereunder on behalf of all employees doing work covered by this Agreement regardless of union status or membership in a Laborers' local union not signatory hereto. All contributions and checkoffs paid by the employer shall be forwarded to the benefit funds in accordance with fund procedures.

Section 2.        In calculating contributions, all fractions of hours shall be paid as full hours. Overtime hours shall be paid at the straight time rate. Deductions for overtime hours shall be made at the straight time rate.

Section 3.    The administrator of the benefit funds may deduct from the sums forwarded to the LEROF, Delaware LPL and the unions an administration fee of ½ of 1 % (one-half percent) of the sums so forwarded.

**Article XXIV.  Collection Procedures.**

Section 1.    All reports and Fund payments required under this Agreement are due by the fifteenth day of the month following the period covered by such reports, and shall be accompanied by a common form to by supplied by the Funds.  Said form shall contain such information concerning the details of payments and hours worked by covered employees as is necessary for the sound administration and operation of all Funds contained herein.  A copy of said common form shall be sent with payment due to each Fund administrator.

Reports and payments received in the office of the appropriate Fund Administrator after the fifteenth day of the month following the period covered are delinquent and shall be subject to liquidated damages of ten percent of the total amount due each Fund (minimum $10.00).  When an employer initially becomes delinquent, and should the employer continue to be delinquent in his reports and payments to the Funds as herein mentioned, the Union shall have the right to withhold employees covered by this Agreement form the employer, and the employer shall, nevertheless, be obliged to continue the employees' wages and fringes at the straight time rate until such time as the delinquent reports and payments have been made in accordance with the above provisions, the no-strike clause of this Agreement notwithstanding, except:

(1)  No employee shall be withheld from any employer who is a member of the Association and who is bound to this Agreement through said Association under this section where the employer has posted a bond and/or deposited cash to secure his obligations to make reports and payments to the Funds as herein mentioned; provided so long as the amount of the bond so posted and/or cash deposited as security is sufficient to satisfy all arrearages, debts, deficits, and liquidated damages due the Funds by said employer, plus interest at three points over prime on said unpaid arrearages, debts, deficits, and liquidated damages; and

(2)  No employee shall be withheld from any employer who is a member of the Association and who is bound to this Agreement through said Association under this section until (a) the administrator of he Funds shall have first communicated  by certified or registered mail, or by faxed notice with a delivery receipt, with said employer apprising him of the delinquency or arrearages, and a copy of said notification shall be sent to the Association and the Union,  and (b) in the event that the said employer fails to satisfy  his total obligation to the Funds within three working days following receipt of the delinquency notice from the office of the administrator of the Funds as herein provided, the Union shall have the right to withhold its employees as more fully set forth herein, and in such event the Union shall not be required to invoke or resort to the arbitration procedure specified in the Agreement, although it may do so as a remedy in addition to the within action.

Section 2.  Any employer who has been delinquent as defined herein to any Funds specified herein for two consecutive months shall make payments as specified herein to all Funds contained herein on a weekly basis until such time as the trustees and/or administrator of said Funds are satisfied that said employer can and will make said payments on a monthly basis without again becoming delinquent.  All regulations and rules contained herein, including liquidated damages, strike provisions, and other enforcement action which would ordinarily apply to monthly payments shall apply to an employer who must pay weekly.

Section 3.  In the event that the trustees or administrator of any Funds herein deem same desirable, they shall have the right to an audit of the employer's payroll records in question covering employees working under this Agreement.  Should initiation of enforcement action be

required to collect arrearages, debts, deficits, or liquidated damages as specified herein, the delinquent employer shall also be responsible for paying any such collection expenses, including but not limited to, attorney and accountant fees incurred by the trustees, even though no legal actions are actually instituted.

### Article XXV. Hours of Work, Overtime and Payment of Wages

Section 1.    Work Week.  The work week shall commence at 12:01 AM Monday and end at 12:00 midnight the following Sunday.

Section 2.    **Daily Straight Time Hours of Work**.  Eight hours shall constitute a day's work, and such shall be made between 8:00 AM and 4:30 PM Monday through Friday, unless a different agreement is reached between the employer and union.  Straight time hours shall not exceed eight in any one day or forty hours in any one week.

Section 3.    **Clean up and Tools**.  There shall be no changing of clothes or other preparation for beginning or quitting work either after said starting time or before said quitting time. Employees working in industrial plants shall be allowed adequate time to pick up their tools at the end of the work day.  Said pick up time shall not exceed ten minutes.

Section 4.    **Meal Breaks**.  The work day shall be interrupted by a meal period of one-half hour which shall begin four hours after the straight time hours of work begin on a given day. Except as otherwise provided herein, meal breaks are unpaid.  Every shift shall have a meal break.

Section 5.    **Coffee Breaks**.  A fifteen minute break shall be allowed on the job between the hours of 9:30 AM and 11:00 AM each day.  Employees shall furnish their own coffee or other non-alcoholic beverage, and shall not be allowed to leave the vicinity of their station of work. When the foreman deems necessary, he shall designate one employee on the job to purchase coffee for all employees on the job.  There shall be no lunch wagons, soft drink machines, coffee pots, stoves, hot plates, etc., on the job without the consent of the employer, and except as provided above, employees shall not be permitted to bring items to the job for sale to other employees.

Section 6.    **Overtime**.  It is agreed that overtime is undesirable and not in the best interests of the industry or employees.  Therefore, except in unusual circumstances, overtime shall not be worked.  When unusual circumstances demand overtime, such overtime shall be kept at a minimum, but it is understood that an employee will work overtime when requested to do so, unless excused by the appropriate supervisor.

The first two hours performed in excess of a standard work day, Monday through Friday, shall be paid at the rate of time and one-half.  Compensation for work on Saturday up to two hours past the end of a work shift, will be paid at time and one-half.  All work performed on Sunday, holidays and in excess two hours beyond a work shift, will be paid at twice the base wage rate.  On any continuous work overtime lasting more than two hours beyond a work shift, a half-hour meal period shall be given with pay, and an additional half-hour meal period with pay shall be given every four hours worked thereafter commencing at the end of the last meal period, providing the overtime work continues after the time each meal period is due.

The employer shall permit employees working on non-scheduled overtime a reasonable arrangement to obtain food.  If employees are required to work through the meal period, they shall be permitted to eat "on-the-fly" without loss of pay for the time spent doing so.

Section 7.    **Make-up Days on Tier II Work.**

(a)  When, during the course of a normal workweek of eight hours days from Monday through Friday, 32 hours or less are worked strictly due to weather conditions or as otherwise mutually agreed by the Union and the Employer, the employing contractor has the option of working Saturday for 8 hours at straight time.

(b)  The following conditions must be satisfied for this Section to become effective:

1.      The sole reason for the loss of hours during the normal work week must be weather conditions.

2.      Only those laborers who were employed during the work week of 32 hours or less on the project where the Employer is requesting a make-up day shall be eligible to work the make-up day.  The Employer shall not be allowed to bring laborers from other sites which are not working on a project utilizing the Saturday make-up day.

3.      All laborers employed on a project opting for a make-up day must be offered the opportunity to work the make-up day.

4.      It is not mandatory for a laborer to work on a make-up day and it is at their choice and discretion.  No negative actions or retribution shall occur against any laborer who opts not to work the make-up day.

5.      The make-up hours shall be paid in the same pay period as the preceding Friday.

6.      The Business Agent of the local union shall be notified as soon as the Employer decides to utilize a make-up day and must concur in its appropriateness, which concurrence shall not be unreasonably withheld.

7.      Make-up days shall not be allowed on Tier I work.

Section 8.  **Holidays and Sundays**:

    The following holidays shall be observed, and when work is performed thereon , or on Sundays. it shall be paid for at twice the base wage rate: New Year's Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. There shall be no work performed on Labor Day except to protect or save life or property. Holidays specified in this Section shall be celebrated in accordance with the Federal Monday Holiday Act, PL 90-363, Section 6103, Title I, Chapter 5, Section 501 of the Delaware Code. (Holidays Falling on Saturday shall be observed on the preceding Friday, and holidays falling on Sunday shall be observed on the following Monday.) In the event that the Building and Construction Trades Council of Delaware should by majority vote declare general election day as it biennially occurs as a nonworking holiday for the building and construction trades, said declaration shall be binding on the Association and the Union. In that event the Association agrees that employers will not work on that day except on emergency type jobs. In such event, only those employees who actually do work on that day on emergency type jobs shall be paid, said payment to be at the straight time base wage rate for the regular straight time hours of work.

**Article XXVI.  Shift Work**

Section 1.      **Pre-shift work**. Employees engaged in preparatory work for brick work, plastering work, and stone work, shall be permitted to start work one-half hour earlier and work one-half hours later than the normal straight time hours of work, provided they receive overtime pay for any work done over eight hours per day.

Section 2.      **Shift work**. If the employer so elects, he may work either two or three shifts in a twenty-four hour period.  When the employer assigns employees to shift work, he shall work them three same shift periods, excluding Saturday and Sunday, or he shall pay them three shift periods.  However, employees manning salamanders shall not be subject to the three day rule. All shift work shall be between midnight Sunday and midnight Friday.  When two shifts of eight

hours or less are employed, they shall be of equal duration and at the same rate. When three shifts are employed, the first shift shall begin at midnight, shall work seven hours, and shall receive eight hours pay. The second shift shall be the regular straight time hours of work from 8:00 AM to 4:30 PM, shall work eight hours and shall receive eight hours pay. The third shift shall begin at 4:30 PM, shall work seven hours and shall receive eight hours pay. Shift work performed on holidays specified herein, Saturdays, Sundays, or beyond the regular shift hours shall be paid at the overtime, holiday or Sunday rates, as applicable, specified in this Agreement.

**Article XXVII.  Cancelled or Interrupted Work Days.**
Section 1.        When an employee is directed to report for work to a job or an employer's shop, whichever he has been directed to report to by the employer, and he is not directed to start work by the employer due to weather conditions, he shall receive no reporting pay. After being directed to start work by the employer, an employee shall be paid for the time that he actually worked on the job at the straight time base wage rate, but in no event less than two hours, unless work is stopped due to weather conditions. However, an employee who works four hours in any one day shall be paid for eight hours. The employer shall have sole responsibility to determine the availability of work due to weather conditions, and employees should contact the employer if weather is in question. When the conditions set forth herein occur on an overtime or shift work day, the overtime or shift work rate shall be applied.

Section 2.        When an employer call for employees to work in the morning of the day they are needed on the job, those employees shall receive no less than eight hours pay. When an employer call for employees to work in the afternoon of the day they are needed on the job, those employees shall receive no less than four hours pay.

**Article XXVIII.  Payment of Wages.**
Section 1.        An itemized statement identifying the employer and showing the hours worked, wages earned, and all tax and other deductions made shall accompany the net wages paid. All deductions shall be listed separately. The employer may withhold five days pay in order to make up the payroll. Employees shall be paid prior to quitting time, pay day, which shall be not later that quitting time Friday. Once a pay day is established, it shall remain the same day for the duration of the job, except if a two-week notice of change is furnished by the employer to the Union.

Section 2.        All wage and fringe payments shall be made by check, except when the Union has cause to doubt the financial responsibility of the employer. In such cases, wage payments shall be in cash. Employers who pay by check shall make arrangements as to how and where checks are to be cashed.

Section 3.        When an employee who has been employed for more than two days on any one job is laid off or discharged, he shall be paid immediately and allowed thirty minutes to pack his tools.

Section 4.        When, through no fault of their own, employees are not paid by quitting time on pay day, or when laid off or discharged, they shall be paid waiting time until paid at the straight time base rate, except when the delay is for reasons beyond the employer's control, e.g. robbery or accident.

Section 5.        Employees who quit on their own accord shall wait to be paid until the next regular pay day.

Section 6.    Employees shall be paid for the entire day at the highest rate worked that day.
Section 7.    The Employer agrees to file Prevailing Wage Surveys with the appropriate state and federal agencies for all work performed under this Agreement.

**Article XXIX. Working Conditions.**
Section 1.    **Change House:**  The employer shall provide a suitable, lighted, and comfortably heated place in which employees covered herein may change their clothing and eat lunch.  During the winter months, heat shall be provided so that employees may from time to time obtain relief from the cold.  Clean lavatories shall also be provided by the employer.

Section 2.    **Drinking water:**  The employer shall furnish suitable drinking water in vessels with a faucet and individual disposal drinking cups for employees working under this Agreement.  Ice shall be furnished between May 1 and November 1.  The cleaning, filling, and distribution of all drinking containers shall be the work of employees covered herein.

Section 3.    **Physical Exams:**  Employees shall take a physical exam as a condition of employment when required by the employer.  In such cases, the cost of the exam shall be paid by the employer.

Section 4.    **Production Limits:**  There shall be neither a limit on production by employees nor any restriction on the full use of tools or equipment.  There shall be no restriction, other than may be required by safety regulations, on the number of employees assigned to any crew or to any service.  Such decisions rest with the employer.  Slow downs, standby crews, and feather bedding practices of any kind shall not be tolerated, which means that all working hours shall be productive hours.  The employer shall not be required to employ personnel just to observe equipment, machines or an operation.  No equipment, machine or operation shall be manned unless physical attendance is necessary to such equipment, machine or operation.

Section 5.    **Tools and Protective Equipment:**  The employer shall furnish all necessary tools and protective equipment, including that which is necessary when employees are required to work under special conditions.

Section 6.    **Safety:**  Employees covered herein shall at all times while in the employ of the employer be bound by the safety regulations and rules as established by the employer in accordance with the Construction Safety Act and OSHA.

Section 7.    **Alcohol, Drugs and Weapons:**  The possession or use of alcohol, illegal drugs, or weapons on the job shall be cause for immediate termination.

Section 8.    **Tool room Attendant:**  A laborer shall serve as tool room attendant.  The tool room attendant shall issue tools and equipment to all crafts; shall do all light maintenance thereof; shall maintain an inventory record of such tools; and shall remain on the job as long as a craft or crafts are using tools from the tool room.

Section 9.    **Transportation to Jobs:**  There shall be no parking, subsistence, or travel expense paid to any employee for work to be performed within the territorial jurisdiction of the laborer's local union.  The Business Agent shall be permitted to inspect and approve any vehicle used to transport employees to and from the job.

Section 10.    **Work Injury:**  When an employee is injured in the shop or on the job, the employer shall take charge of the employee and see that he is given first aid.  If seriously injured,

the employer shall accompany the employee to the hospital or his home, or shall appoint someone to accompany him. The employee shall receive a full day's pay on the day of the injury when lost time is spent in medical treatment. After the employee reports back to work, and when additional treatment is required by medical authority, the employee shall also be paid for time required on subsequent days to travel to and from the medical station and to receive such treatment, provided that the employee is not covered for the same by Worker's Compensation. Transportation for said additional treatment shall be arranged by the employer.

**Article XXX. Disputes and Procedures.**

Section 1.       **Jurisdictional disputes**. It is agreed between the parties hereto that this Agreement is applicable to construction work as described in this Agreement. It is further agreed that should the Union be aggrieved over the assignment of work which it claims to be covered by this Agreement to another trade, then the Union Business Manager shall attempt to resolve the dispute through a discussion with the employer and the Business Manager of the other trade involved. If the matter is still unresolved, an attempt to resolve the matter will then be made through a discussion between the Unions involved and the Director of Labor Relations of the Association, if the employer is an Association member. If such discussion does not result in a prompt settlement of the dispute, the matter may then be referred to the general presidents of the respective contesting Unions and the Association in an effort to resolve the matter. If the matter is not resolved in this matter, the parties shall then select an impartial third party as provided below, or pursue the matter through the procedures of the National Labor Relations Board. Pending an orderly resolution of the matter there shall be no interruption of work by a work stoppage, strike or refusal to refer men to the project by the Union.

The employer shall make work assignments in accordance with the charters of the unions, established trade practice, the agreements and decisions of record recognized by the Building Trades Department, AFL-CIO, and prevailing trade practice, with due regard, however, to the efficiency and economy of operations, with the understanding that such assessment shall be made solely on the basis of journeymen doing the work and not on the basis of a trade's apprentice replacing a journeyman to do the work.

Section 2.       **Non-Jurisdictional Disputes and Grievances**. The following shall be the procedure to be followed with respect to all disputes of any nature whatsoever (except jurisdictional disputes) which may arise between the parties hereto or their individual members involving the interpretation and application of this Agreement.

(a)      Only the employer or the Union may bring a grievance pursuant to this procedure.

(b)      If a dispute affects, or arises on, a particular job or operation, an attempt shall be made to settle it by discussion between the employer and the Union's Business Manager.

(c)      If the discussion above does not result in a prompt settlement of the dispute, or if the dispute affects or involves more than one job or operation, and the employer is a member of the Association, an attempt shall be made to settle the dispute by a discussion between the Business Manager of the Union and the Director of Labor Relations of the Association. If such discussion does not result in a prompt settlement of the dispute, and either the Association or employer, as applicable, or the Union desires further action respecting such dispute, such further action shall be arbitrated in the manner hereinafter set forth.

(d)      The Association or employer, as applicable, or the Union, whichever decides that there shall be further action on the dispute, shall notify the other party in writing by registered mail of its intention to submit the dispute to arbitration, and shall, simultaneously, file with the American

Arbitration Association a written demand for arbitration of said dispute, whereupon the arbitrator shall be appointed in accordance with the then prevailing rules of the Labor Arbitration Tribunal of the said American Arbitration Association, except that if the parties hereto fail to agree upon any other persons named in the first list submitted by the American Arbitration Association to the parties, or if those named in said list decline or are unable to act, or if for any reason the appointment cannot be made from such first submitted list, the American Arbitration Association shall send a second list of names of persons chosen from its panels, and thereafter proceed in accordance with its rules aforesaid. The arbitrator thus appointed shall hold hearings as promptly as possible and shall render his award in writing. Such award shall be binding and final on all parties and upon their respective principals or members. In considering his award, the arbitrator shall not modify, detract from, or alter the provisions of this Agreement. The arbitrator's fees and expenses shall be shared equally by the parties.

Section 3.        **Strikes and Lockouts:** It is agreed that their shall be no slowdowns, strikes, or work stoppages of any character whatsoever by the Union and that there shall be no lockouts by the Association or employer, as applicable, during the term of this Agreement, except otherwise provided herein. This provision shall not apply, however, should either party hereto refuse to submit any matter to arbitration as provided for herein, or to abide by the decision of the arbitrator, when an employer has not paid employee's wages in full and on time as specified herein, or when the Union has been advised by the administrator of any fund or checkoff recipient that the employer is delinquent required payments.

**Article XXXI. Term of Agreement.**
The Term of this Agreement shall be from May 1, 2004 through April 30, 2007, and from year-to-year thereafter unless notice of change or termination is given in writing by either party to the other at least sixty days prior to such anniversary date. The nature of the changes desired shall be specified in the notice.

Contractors signatory to this Agreement who have not granted their bargaining rights to the Association shall be bound to any successor Agreement agreed to by the Association and union unless they have first given notice to the union in writing that they will withdraw from the Agreement at its termination not more than ninety nor fewer than sixty days prior to said termination. In such event the Agreement shall continue from year-to-year until such notice is given not more than ninety nor fewer than sixty days prior to April 30th of each succeeding year. Upon receipt of such notice, the Agreement will terminate on April 30th of the following year, or the termination date provided for in the then current Agreement, whichever is sooner.

IN WITNESS WHEREOF, we the authorized representatives of the Association and the Union have hereunto set forth our hands and seals this /5 day of May , 2004:

**For the Association:**

_John F. McMahon, Jr._

_____
**Charles Showell**

_____
**John E. Healy, III**

_____
**John Olson**

_____
**Mark Rizzo**

_____
**Paul H. Talley, Jr.**

**For the Unions:**

_____
**Gurvis Miner**

_Charles Warren_
**Charles Warren**

_William Carter_
**William Carter**

_____
**Patrick C. Byrne**

_James Maravellas_
**James Maravellas**

21

# Addendum

In the event that the Association enters into an agreement with any other trade for the adoption of a subcontractor clause or similar clause having the same effect, then that clause shall become a part of this Agreement, at the option of the Union, on the same terms and conditions as given in the other trade's agreement. The Association shall give written notice to the Union of the adoption of any such clause within ten days of such agreement, which notice shall include a copy of the text thereto.

# Manual of Jurisdiction

It is the purpose of this Manual of Jurisdiction to outline the craft jurisdictional claims of the Laborers' International Union of North America.

**Tenders:** Multi-Trade Tenders tending masons, plasterers, carpenters and other building and construction crafts.

Tending shall consist of preparation of materials and the handling and conveying of materials to be used by mechanics of other crafts, whether such preparation is by hand or any other process. After the material has been prepared, tending shall include the supplying and conveying of said material and other materials to such mechanic, whether by bucket, hod, wheelbarrow, buggy, power buggy, or other motorized unit used for such purpose, including all Lulls and fork lifts of any description or type and whosesoever used, conveyors, Bobcats, and all similar machinery, and the loading, unloading and handling of all materials onto such devices.

Unloading, handling and distributing of all materials, including sheetrock, paneling, ceiling tile and assemblies, windows, door bucks, metal studs, finished and rough lumber, finished cabinetry, and all fixtures, furnishings and appliances, crated or uncrated, from point of delivery to stockpiles and from stockpiles to approximate point of installation. The unloading and loading of trucks and freight cars at the site.

The moving of all furniture, crated or uncrated, new or old, in a building under construction or renovation, including the loading and unloading and the distribution and erection of furniture on a job or project.

The unloading and handling, including all hooking, unhooking, placement and signaling, of all concrete plank, sills, coping, and other concrete building materials, including precast, post, pre-stressed, and preformed concrete in any form, and all brick panel together with all similar building and construction materials prepared off-site which replace materials, methods or work formerly done on-site by any trade that was tended by laborers, at the job site.

The aging and curing of concrete, mortar and other materials applied to walls, floors, ceilings and foundations of buildings and structures, highways, airports, overpasses and underpasses, tunnels, bridges, approaches, viaducts, ramps or other similar surfaces by any mode or method, except where otherwise assigned to a heavy construction laborers local union.

The cutting of masonry where sledge, mechanical or pneumatic hammers are used. Operation of all hand, pneumatic, electric, motor, combustion, or air-driven tools, concrete saws or equipment necessary for the performance of work described herein, including forklifts, rollers, wackers (with or without levers), vibrators, concrete saws regardless of type (self propelled or manual), gunite nozzle and machine workers, power rollers, combination tamper and vibrator, power wheel barrows and buggies, and all other equipment, including all Bobcats (with or without accessories), used to do work once done by laborers.

**Cleanup:** Cleaning and clearing of all debris, including wire brushing of windows, scraping of floors, removal of surplus material from all fixtures within confines of structure and cleaning of all debris in building and construction area, including all cleanup after all other trades which cleanup shall not be performed by any other trade or the apprentice of any other trade.

The general cleanup, including sweeping, cleaning, washing down and wiping of construction facilities, equipment and furnishings and removal and loading or burning of all debris including crates, boxes, packaging waste material. Washing or cleaning of siding of any type, walls, partitions, ceilings, windows, bathrooms, kitchens, laboratory, and all fixtures and facilities therein.

Clean-up, vacuuming, mopping, washing, waxing and polishing or dusting of all floors, surfaces or areas whether by hand or machine. Final clean-up of all types and any description on all projects, including but not limited to industrial, office, residential and retail projects.

**Water Removal:** The dewatering of all construction sites and/or the removal of drainage or other water from construction sites or areas. The handling, transportation, fueling, refueling and cleaning of pumps, foot valves, and hoses and all engineers' equipment and the attaching of the same, and the installation, driving and servicing of all well points, wick drains and any other dewatering system.

**Weather and Other Temporary Protection:** The installation, dismantling, adjusting of panels, windbreaks and/or temporary enclosures or other weather protection devices whether they be canvas, synthetic or other material of any configuration and for any purpose.
   All temporary protection of floors or any other surface by any method or material including plywood, cardboard, masonite, homosote, paper, plastic, sysilcraft, etc.

**Temporary Heat:** Drying of plaster, concrete, mortar or other aggregate, when done by salamander heat or by temporary heating units or any other drying process of any type or description. The heating of all buildings under construction where any form of temporary heat is used, including salamanders and megaheaters, regardless of fuel or power source, and the placing, setup, lighting, refueling, servicing, maintenance, manning and removal of all such heaters.

**Scaffolds:** Erection, planking and removal of all scaffolds of all types, including all platforms, runways, ramps and putlock scaffolds, for lathers, plasterers, bricklayers, masons and other construction trades crafts. Building, planking or installation and removal of all staging, swinging and hanging scaffolds, including maintenance thereof. Where self-supporting scaffolds or staging over fourteen feet in height or specially designed scaffolds are built by Carpenters, Laborers shall tend said Carpenters on erection thereof; the dismantling of said scaffolds, as well as preparation for foundation or mud-sills for said scaffolds and maintenance of same shall be done by Laborers, together with all transportation and stockpiling of dismantled scaffold equipment, planks and materials.

**Masonry Scaffolds:** With reference to the Masonry Contractors, the laborers will do the entire erection and dismantling of all scaffolds. The aforesaid jurisdiction is provided by the International Agreement between the Mason Contractors Association of North America, Incorporated and the Laborers' International Union of North America, executed as of January 6, 1955 and amended November 1, 1979, a copy of which is incorporated by reference and made part hereof.

**Excavations and Foundations, Site Preparation and Clearance, Transportation and Transmission Lines:** Excavation for building and all other construction; digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing, bracing and propping of foundations, holes, caissons, cofferdams, dams, dikes and irrigation trenches, canals, and all handling, filling and placing of sand bags connected therewith. All drilling and scaling on the site, including areas adjacent or pertinent to construction site; installation of temporary lines.
   On-site preparation for clearance for construction of any structures where the same are constructed within the property lines of the building project. Clearing and slashing of brush or trees by hand or with mechanical cutting methods. Falling, bucking, yarding, loading or burning of all trees or timber on construction areas. Choker setters, off bearers, lumber handlers and all laborers connected with on-site portable sawmill operations connected with clearing. Erection, dismantling and/or reinstallation of all fences. Clean-up of job sites, including tying on,

signaling, stacking of brush, trees or other debris, and burning where required. All soil test operations of semi and unskilled labor, such as filling of sand bags, handling timber and loading and unloading of same.

All grading of top soil by any method, seeding by hand, device or machine, whether power or manual, all landscaping, and the planting of all trees, shrubs, bushes, ornamental and other plants of any description.

**Concrete, Bituminous Concrete and Aggregates:**

(a)    Concrete, bituminous concrete, or aggregates for walls footings, foundations, floors or for any other Construction. Mixing, handling, conveying, wheeling, ramming, spreading, leveling, pouring, vibrating, gunniting and otherwise placing concrete, cement mortar, or aggregates, whether done by hand or any other process. All types of handling and distribution of all ready-mixed concrete. Wrecking, stripping, dismantling and handling concrete forms and false work whether constructed of wood, aluminum or other material. Building of centers for fireproofing purposes. Operation of motorized wheelbarrows or buggies or machines of similar character, whether run by gas, Diesel or electric power. When concrete or aggregates are conveyed by crane or derrick, or similar methods, the hooking on, signaling, dumping, and unhooking the bucket. Placing of concrete or aggregates, whether poured, pumped, gunited, or placed by any other process. The assembly, uncoupling of all connections and parts of or to equipment used in mixing or conveying concrete, aggregates or mortar, and the cleaning of such equipment, parts and/or connections. All vibrating, grinding, spreading, flowing, puddling, leveling and strike-off of concrete or aggregates by floating, rodding or screeding, by hand or mechanical means, including the setup, operation, maintenance, dismantling, and moving of any and all automatic or self-leveling or similar concrete leveling machines, prior to finishing. Where pre-stressed or pre-cast concrete slabs, sill, coping, concrete plank, walls or sections, including brick panels, or other preformed concrete in any form, whether steel reinforced or not, are used, all loading, unloading, stockpiling, hooking on, signaling, unhooking, setting and barring into place of such slabs, walls or sections. All mixing, handling, conveying, placing and spreading of grout for any purpose. Green cutting of concrete or aggregate in any form, by hand, mechanical means, grindstones or air or water.

(b)    The filling and patching of voids, crevices, etc., to correct defects in concrete caused by leakage, bulging, sagging, etc.

(c)    The loading, unloading, hoisting, carrying, distributing and handling of all rods, mesh and material for use in reinforcing concrete construction.

(d)    All work on interior concrete columns, foundations for engine and machinery beds.

(e)    The stripping of forms, other than panel forms which are to be re-used in their original form, and the stripping of forms and panels in their entirety, where the forms are not to be reused on the same job for the same purpose and the stripping of all flat arch work and the replacing of all shoring or supports and the stripping of all footing forms. The moving, cleaning, oiling and carrying of all forms to the next point of erection. The cleaning of all materials before leaving a job shall be the work of the laborers. The jacking of slip forms, and all work connected therewith.

The snapping of wall ties and removal of tie rods. All sandblasting, including the handling, placing and operation of the nozzle, hoses and pots or hoppers on sandblasting or other abrasive cleaning and the maintenance, moving, setting up, servicing, supplying, storage, and all aspects of the operation of all sandblasting equipment of all types and descriptions for any purpose.

**Streets, Ways and Bridges**: Work in the excavation, preparation, concreting, asphalt bituminous concrete and mastic paving, paving, ramming, curbing, flagging and surfacing of streets, ways, courts, underpasses, overpasses, bridges, approaches and slope walls and the grading and landscaping thereof and all other labor connected therewith. Cleaning, grading, fence or guard

rail installation and/or removal for streets, highways, roadways, aprons, runways, sidewalks, parking areas, airports, approaches and other similar Installations. Preparation, construction and maintenance of roadbeds and sub-grade for all paving, including excavation, dumping and spreading of sub-grade material, ramming or otherwise compacting. Setting, leveling and securing or bracing of metal or other road forms and expansion joints, including placing of rein- forcing, mats or wire mesh, for the above work. Loading, unloading, placing, handling and spreading of concrete aggregate or paving material, including leveling of the surface. Strike-off of concrete, when used as paving material by hand and floating or mechanical screeding for strike-off. Cutting of concrete for expansion joints and other purposes. Setting of curb form and the mixing, Pouring, cutting, flowing and strike-off of concrete used therefor. The setting, leveling and grouting of all pre-cast concrete or stone curb sections. Installation of all joints, removal of forms and cleaning, stacking, loading, oiling and handling. Grading and landscaping in connection with paving work. All work in connection with loading, unloading, handling, signaling, slinging and setting of all paving blocks, rip-rap or retaining walls such as stone, wood, metal, concrete or other material, including all work involving the handling, loading, unloading, moving, storing, tying together and setting of gabion baskets, and the preparation of surfaces and areas to receive same.

**Trenches, Manholes, Handling and Distribution of Pipe, etc.:** Cutting of streets and ways for laying of pipes, cables or conduits for all purposes; digging of trenches, manholes, etc.; handling and conveying all materials; concreting, backfilling, grading and re-surfacing and all other labor connected therewith. Clearing and site preparation as described herein. Cutting or jack hammering of streets, roads, sidewalks or aprons by hand or the use of air or other tools. Digging of trenches, ditches and manholes and the leveling, grading and other preparation prior to laying pipe or conduit for any purpose. Loading, unloading, sorting, stockpiling, wrapping, coating, treating, handling and distribution of water mains, gas mains and all pipe, including placing, setting and removal of skids. Cribbing, driving of sheet piling, lagging and shoring of all ditches, trenches and manholes. Handling, mixing or pouring of concrete and the handling and placing of other materials for saddles, beds or foundations for the protection of pipes, wires, conduits, etc. Back-filling and compacting of all ditches, resurfacing of roads, streets, etc., and/or restoration of lawns and landscaping.

**Shafts and Tunnels, Subways and Sewers:** Construction of sewers, shafts, tunnels, subways, caissons, cofferdams, dikes, dams, levees, aqueducts, culverts, flood control projects and airports. All underground work involved in mines, underground chambers for storage or other purposes, tunnels or shafts for any purpose, whether in free or compressed air. Drilling and blasting, mucking and removal of material from the tunnels and shafts. The cutting, drilling and installation of material used for timbering or re-timbering, lagging, bracing, propping, or shoring the tunnel or shaft. Assembly and installation of multi plate, liner plate, rings, mesh, mats, or forms for any tunnel or shaft, including the setting of rods for same. Pouring, pump-creting or guniting of concrete in any tunnel or shaft. Operation, manual or hydraulic jacking of shields and the use of such other mechanical equipment as may be necessary. Excavation or digging and grading of footings and foundations for bridges, overpasses, underpasses, aqueducts, etc. and their approaches, All concrete work as described above and in addition, the hooking on, signaling and dumping of concrete for treme work over water on caissons, pilings, abutments, etc. Excavation. grading, grade preparation and landscaping of approaches. Installation of pipe, gratings and grill work for drains or other purposes. Installation of well points or any other dewatering system.

**Sewers, Drains, Culverts and Multi plate:** Unloading, sorting, stockpiling, wrapping, coating, treating, handling, distribution and lowering or raising of all pipe or multi plate. All digging,

driving of sheet piling, lagging, bracing, shoring, and cribbing; breaking of concrete back-filling, tamping, re-surfacing and paving of all ditches in preparation for the laying of all pipe. Pipe laying, leveling and making of the joint of any pipe used for main or side sewers and storm sewers. All of the laying of clay, terra cotta, ironstone, vitrified concrete, plastic or other pipe and the making of joints for main or side sewers and storm sewers and all pipe for drainage. Unloading handling, distribution, assembly in place, bolting and lining up of sectional metal or other pipe, including corrugated pipe. Laying of lateral sewer pipe from main sewer or side sewer to building or structure. Laying, leveling and making of the joint of all multi-cell conduit or multi-purpose pipe. Cutting of holes in walls, footings, piers or other obstructions for the passage of pipe or conduit for any purpose and the pouring of concrete to secure said holes. Digging under streets, roadways, aprons or other paved surfaces for the passage of pipe, by hand, earth auger or any other method and manual and hydraulic jacking of pipe under said surfaces. Installation of septic tanks, cesspools and drain fields.

**Sidewalks and Curbs**: Work in the excavation, preparation, the grading and landscaping of all sidewalk and curb areas, regardless of material used, and the concreting of all such areas, and all semi-skilled and unskilled labor connected therewith.

**Underpinning, Lagging, Bracing, Propping and Shoring**: Underpinning, lagging, bracing, propping and shoring, raising and moving of all structures; raising of structure by manual or hydraulic jacks or other methods. All work on house moving, shoring and underpinning of structures; loading, signaling, right-of-way clearance along the route of movement. Resetting of structure in new location to include all site clearing, excavation for foundation and concrete work. Clean-up and back-filling, landscaping of old and new sites.

**Drilling**: All work of drilling, jack hammering. Operation of all rock and concrete drills, including handling, carrying, laying out of hoses, steel handling, installation of all temporary lines. All high scaling and other rock breaking and removal after blast.

**Signal Men**: Signal men on all construction work defined herein, including traffic control signalmen at construction sites. When concrete or aggregates are conveyed by crane or derrick or similar methods, the hooking on, signaling, (whether in the open or in the blind) dumping and unhooking of the bucket. Where wrecking is done by ball, all signaling shall be done by a laborer.
    On all jobs where hoisting engines are in use, a Laborer shall act as bell-man. He shall load and unload the hoist and give bell signals for the raising and lowering of the hoist.
    On all jobs where elevators are in use, the ringing of bells and use of radio communicators or telephones. When machines are in use for excavation, backfilling, grading or other purposes, the guiding and directing of such machines.

**General Excavation and Grading**: The clearing, excavating, filling, back-filling, grading and landscaping, planting and seeding of all sites for all purposes and all labor connected therewith, including chainmen, rodmen, grade markers, etc.

**Wrecking**:     The wrecking or dismantling of buildings and all structures. Breaking away roof materials, beams of all kinds, with use of cutting or other wrecking tools as necessary. Burning or otherwise cutting all steel structural beams.    The operation and maintenance of all hydro-demolition equipment. Breaking away, cleaning and removal of all masonry and wood or metal fixtures for salvage or scrap. All hooking on and unhooking and signaling when materials for salvage or scrap are removed by crane or derrick. All loading and unloading of materials carried away from the site of wrecking. All work in salvage or junk yards In connection with cutting,

cleaning, storing, stockpiling or handling of materials. All clean-up, removal of debris, burning, backfiring and landscaping of the site of wrecked structure. Where wrecking is done by ball, all signaling shall by done by a laborer. The dismantling, removal or demolition of all ductwork and HVAC equipment not to be reused on the job site, and the handling and removal of all disconnected ductwork and HVAC equipment from the area to disposal areas. The handling, transportation and stockpiling of all disconnected ductwork and HVAC equipment which is to be reused is to be done by laborers.

**Railroad Track Work:** Right-of-way clearance, excavation, grading, sub-grading, ballasting and compacting of right-of-way. Loading, unloading, stockpiling, handling and distribution of track and ties and placing of or jacking track and ties at point of installation. All burning or otherwise cutting of track. All work involving the cutting, welding or demolition of railroad metals or tracks. All third rail work, operation of power spike drivers, power spike pullers, power track jacks, tamping machines and similar track laying equipment, spiking of all rails, contact rails, third rail tracks and ties, including the welding, other fastening and other bonding of all running rails and tracks, the mixing, pouring and placement of grout, drypacking, and concrete for all track related work, including but not limited to rails, ties, tracks, plates, and columns. Setting of tie plates, bolting, leveling and gauging of rails and all spiking, whether by hand or mechanical means. Placing and tamping of ballast by hand or mechanical means. Construction and/or relocation of mainlines, shoe flys, sidings, gradings, crossings, relocating of pipes and drainage and culverts connected with same and removal and replacing of all fences.

**Use of Tools:** Operation and maintenance of all hand, pneumatic, electric, motor, combustion or air-driven tools or equipment necessary for the performance of work described herein. Mechanized equipment including Bobcats used for grinding, finishing, demolition, clearing, excavating, foundation trenching, or other trenching, filling, backfilling, finish grading, planting, seeding, and the restoration of all sites will be performed and the equipment maintained by laborers. Pumps shall be manned by laborers. Where new tools or equipment are introduced into the area which do work formerly done by laborers, the new tools or equipment are to be handled, maintained and operated by laborers.

**Hazardous Materials:** The demolition, removal and remediation of all asbestos and other hazardous materials and the decontamination of all tools, equipment and vehicles used at such sites, including but not limited to asbestos, toxic waste, etc., all work in connection with the asbestos, radiation, hazardous waste, lead, chemical, biological, and mold remediation and abatement, including but not limited to the removal, abatement, neutralization, enclosure, encapsulation, eradication, and all other forms of remediation of the same, and including the decontamination of personal protective equipment, chemical and biological protective clothing, equipment, vehicles, and machinery relating to the above, and further including the erection, moving, servicing, and dismantling of all enclosures, scaffolding, barricades, and the operation of all tools and equipment in connection therewith, including but not limited to bobcats and forklifts, and the labeling, bagging, cartoning, crating, or other packaging of materials for disposal or storage; and the cleanup of the work site and all other work incidental to such remediation and abatement as set forth above, and all work performed within a containment area.

**Miscellaneous:** All yardmen, watchmen, guards, flagmen, the manning and servicing of all tool rooms, tool sheds, material storage and distribution points, warehouse workers, cleaners, debris handlers, water boys, material yards, junk yards, asphalt plants, concrete products plants, and all maintenance work and work of skilled, semiskilled and unskilled nature.

All such work and jurisdiction as may have been acquired by reason of amalgamation or merger with former national or international unions and as may be hereafter acquired; including all such

work and jurisdiction as declared by actions of the Executive Council or conventions of the American Federation of Labor.

**Other Work:** All such other work as may be assigned by the Employer where such assignment is accepted by the Union. The Employer agrees to recognize the laborer's claim to any tasks associated with new technology.

**IN WITNESS WHEREOF, we the authorized officers of the Employer and the Union have hereunto set forth our hands and seals this _____ day of _____ 200___:**

**For the Contractor:**

_____
Print Name of Contractor

_____
EIN

By:_____
    Signature of Authorized Representative

_____
Print Name and Title of Authorized Representative

_____
Print Street Address

_____
Print City, State and Zip Code

_____
Telephone Number          Fax Number

**For the Delaware Laborers' District Council (Locals 199 and 847)**

**By:**_____
    Business Agent Signature

_____
Print Name of Business Agent and Local Union Number

JS44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Laborers Welfare Fund of Delaware Local No. 199, Laborers of Delaware Local Union No. 199 Pension Plan, Local 199 Laborers International Union of North America Annuity Plan, Laborers Local 199 Training and Apprenticeship Fund, Laborers Local 199 Vacation Fund and Laborers'-Employers' Cooperative Education Trust Funds, and Laborers International Union of North America, Local No. 199 AFL-CIO | David W. Talley General Contractor LLC |
| | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT_____ (IN U.S. PLAINTIFF CASES ONLY) |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF__New Castle____ (EXCEPT IN U.S. PLAINTIFF CASES) | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, TELEPHONE NUMBER) Timothy Snyder, Esquire , Young Conaway Stargatt & Taylor, LLP Brandywine Building, 17th Floor 1000 West Street Wilmington, DE 19801 (302) 571-6645 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION PLACE AN "X" IN ONE BOX ONLY

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated or Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury | ☐ 620 Other Food & Drugs | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury | of Property 21 USC 881 | 28 USC 157 | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | Rates/etc. |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product Liab. | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced |
| ☐ 152 Recovery of Defaulted | Liability | | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | and Corrupt Organizations |
| Student Loans (Excl Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 690 Other | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | ☐ 345 Marine Product | ☐ 370 Other Fraud | | | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | Exchange |
| ☐ 160 Stockholders Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | Product Liability | ☐ 385 Property Damage | | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization |
| | Injury | | | ☐ 864 SSID Title XVI | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 900 Appeal of Fee |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Determination Under Equal |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☒ 791 Empl Ret. Inc. Security | ☐ 871 IRS Third Party | Access to Justice |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil | ☐ 540 Mandamus & Other | Act | 26 USC 7609 | ☐ 950 Constitutionality of |
| | Rights | ☐ 550 Civil Rights | | | State Statutes |
| | | ☐ 555 Prison Condition | | | ☐ 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐1 Original Proceeding   ☐2 Removed from State Court   ☐3 Remanded from Appellate Court   ☐4 Reinstated or Reopened   ☐5 Transferred from another district (Specify)   ☐6 Multidistrict Litigation   ☐7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) Suit brought under 29 U.S.C. Sections 301 and 1032 by Taft-Hartley Benefit Funds and Labor Organization to compel audit of books and records

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See Instructions):   JUDGE_____   DOCKET NUMBER_____

DATE _January 29, 2007_   SIGNATURE OF ATTORNEY OF RECORD _Timothy Snyder_

**FOR OFFICE USE ONLY**
RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. __0 7 - 5 5__

## ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

### NOTICE OF AVAILABILITY OF A
### UNITED STATES MAGISTRATE JUDGE
### TO EXERCISE JURISDICTION

I HEREBY ACKNOWLEDGE RECEIPT OF ____ COPIES OF AO FORM 85.

JAN 2 9 2007
_____
(Date forms issued)

_____
(Signature of Party or their Representative)

_FRANK JOYCE, PARCELS INC._
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action